UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIMBALL RUSTIN ROY SCARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16-cv-2605-TWP-DML |
| | ) | |
| JPMORGAN CHASE BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## Report and Recommendation on Motions to Dismiss
### (Dkt. Nos. 77, 79, 89 & 91)
### and
### Order on Related Motions
### (Dkt. Nos. 109, 127, 132, 137 & 138)

Before the court for a report and recommendation on their appropriate disposition are four motions to dismiss filed by the defendants. As addressed below, the Magistrate Judge recommends that the District Judge GRANT the motions to dismiss. In addition, several non-dispositive motions come before the Magistrate Judge for ruling. For the reasons that follow, these motions are DENIED.

**Background**

Kimball Rustin Roy Scarr executed a mortgage on his home in Connersville, Fayette County, Indiana, with SurePoint Lending ("SurePoint") in 2008. The mortgage was dated August 26, 2008, and next to his signature, Scarr wrote "26 Aug 2008". Scarr also executed a promissory note dated August 26, 2008, and next to his signature, he wrote "26 Nov. 2008." Scarr maintains that he signed the

mortgage in August 2008 but did not sign the promissory note until November 2008.  Nonetheless, loan funds were disbursed beginning in August or September 2008, and the mortgage was recorded on September 4, 2008.  The mortgage was assigned to JPMorgan Chase Bank, N.A. ("Chase").  In June 2013, after making mortgage payments for almost five years, Scarr stopped making mortgage payments.

Chase commenced a mortgage foreclosure action in Fayette County Superior Court against Scarr, which was assigned Cause No. 21D01-1312-MF-00873.[1]  Scarr challenged the validity of the promissory note and mortgage.  Chase filed a motion for summary judgment.  The trial court held a hearing on the motion and, on August 1, 2014, granted Chase summary judgment in the amount of $200,649.11 and ordered foreclosure of the mortgage.  (*See* Docket No. 92-2).  The trial court determined that Scarr had executed the promissory note and mortgage and, even if he had not signed the promissory note in August 2008, his actions after the closing ratified the mortgage loan.  More specifically, the court found that despite believing he had the right to rescind the mortgage loan, Scarr executed the promissory note (he claimed in November 2008), and he made monthly payments through June

---

[1]    Because the defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the court may consider matters outside the pleadings to resolve the motions.  *See Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir. 1989).  And the court may take judicial notice of matters of public record without converting the motions to dismiss to motions for summary judgment.  *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (concluding district court's consideration of public court documents was proper).

2013.  The trial court concluded that by tendering monthly payments, Scarr ratified the promissory note and mortgage and thus mooted any alleged problems with the closing of the mortgage loan.  Chase, the trial court also concluded, was entitled to enforce the promissory note.  *See Scarr*, 40 N.E.3d 531, at *2.

Scarr filed a motion to correct error, which was denied.  He subsequently filed a motion for relief from judgment, arguing that Chase lacked standing to foreclose the mortgage, that SurePoint engaged in fraud and misrepresentation in securing the note without making proper disclosures to him, that he had rescinded the mortgage loan in late August 2008, and that the Truth in Lending Act was violated by a lack of disclosure regarding the promissory note and mortgage.  Before the trial court ruled on the motion, Scarr filed a notice of appeal, so the trial court found it lacked jurisdiction to decide the motion for relief from judgment.

On appeal, Scarr challenged the grant of summary judgment and asserted Chase lacked standing to foreclose on the mortgage.  The Indiana Court of Appeals affirmed the grant of summary judgment and denial of the motion to correct error.  *See Scarr*, 40 N.E.3d 531 (Ind. Ct. App. 2015) (unpublished), *trans. denied*, 49 N.E.3d 107 (Ind. 2016).  The court of appeals first determined that, even assuming the promissory note and mortgage were executed by Scarr on different dates, the difference in dates did not render those agreements unenforceable.  *Scarr*, 40 N.E.3d 531, at *4.  Second, the court agreed that even if there were irregularities with the execution of the promissory note, Scarr had ratified the note and mortgage and could not assert such irregularities as a defense.  *Id.*  The appellate court

declined to address Scarr's argument that Chase lacked standing because the trial court had not had the opportunity to rule on the motion for relief from judgment in which Scarr had made similar arguments. *Scarr*, 40 N.E.3d 531, at *5. The Indiana Supreme Court denied Scarr's motion for transfer in April 2016. *See* 49 N.E.2d at 107.

On September 30, 2016, Kimball Rustin Roy Scarr, *pro* se, filed his complaint in this action. On March 9, 2017, he filed an amended complaint (hereinafter the "complaint"), which is the operative complaint in this case. Count 1 of the complaint alleges that Defendants SurePoint and Chase engaged in fraud in originating a mortgage loan without a note and making inaccurate and incomplete disclosures, and engaged in a conspiracy to prevent Scarr's rescission of that loan. Count 2 alleges that in connection with the mortgage loan, Chase and LSF9 Mortgage Holdings, LLC violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1631–1651; Regulation X, 12 C.F.R. § 1024; and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, by withholding information about the assignment of mortgage loan and withholding RESPA notifications from Scarr. Count 3 attempts to claim that SurePoint, Chase, LSF9 Mortgage Holdings and LSF9 Master Participation Trust,[2] and Caliber Home Loans, Inc. engaged in

---

[2]    In August 2014, Chase sold the mortgage to LSF9 Master Participation Trust, and servicing rights were transferred to Caliber Home Loans in October 2014. *Scarr*, 40 N.E.3d 531, at *3. In April 2017, Chase assigned its right, title, and interest in the state court foreclosure judgment obtained against Scarr to U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, its successors and/or assigns. (Dkt. No. 92-2).

fraud and conspiracy to commit fraud to prevent rescission and obtain a judgment of foreclosure against Scarr. That count also alleges obstruction of justice and money laundering. Count 4 claims inadequate management and oversight by the United States Department of Housing and Urban Development ("HUD") of its Federal Housing Administration ("FHA") insurance programs. The complaint contains a fifth count alleging injuries to Scarr and his family, namely, the mortgage loan, the state court foreclosure action, the loss of FHA insurance protections, the personal judgment against Scarr in the foreclosure action, the order of a sheriff's sale of his home, and emotional distress. (*See* Docket No. 64 at 10). Scarr seeks damages, rescission of the mortgage, an order submitting the matter to the "proper enforcement authority" for investigation, and a mandamus to the HUD Secretary to operate HUD's program in accordance with the law. (*Id.* at 14–15).

The remaining defendants,[3] have filed motions to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim. Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and Chase move to dismiss under Rules 8(a), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Among other grounds for dismissal, they assert that the court lacks subject matter jurisdiction over the complaint under the *Rooker-Feldman* doctrine. They also argue the complaint should be dismissed under the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion).

---

[3]    On June 30, 2017, SurePoint was dismissed without prejudice for lack of service. (Docket No. 123).

Similarly, HUD moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss, arguing that the court lacks subject matter jurisdiction and Scarr lacks standing to challenge the Secretary's actions under the National Housing Act ("NHA") or to seek imposition of criminal penalties. HUD also argues that Scarr has not demonstrated a waiver of sovereign immunity that would allow for a claim for money damages. HUD further contends that Scarr cannot show he is entitled to the extraordinary remedy of mandamus.

Defendants LSF9 Master Participation Trust, LSF9 Mortgage Holdings, LLC, and Caliber Home Loans, Inc. (collectively the "LSF9/Caliber Defendants") move for dismissal of the complaint under Federal Rules of Civil Procedure 8, 9, 12(b)(1) and 12(b)(6), raising some of the same grounds for dismissal as the other defendants, including lack of subject matter jurisdiction.

Finally, Feiwell Hannoy, P.C., Leanne S. Titus, and Bryan K. Redmond (the "Feiwell Defendants"), are the lawyers who represented Chase, the plaintiff in the state court foreclosure action against Scarr. They move to dismiss the complaint under Rules 8, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Among other grounds, they assert that the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

The court will first set forth the legal standards governing motions to dismiss and then address each dismissal motion in turn.

## Analysis of Motions to Dismiss

<u>Dismissal Standards</u>

When considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *See Citadel Secs., LLC v. Chicago Bd. Options Exchange, Inc.*, 808 F.3d 694, 698 (7th Cir. 2015). The court may "'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir. 1979)). The party invoking the court's jurisdiction has "the burden of supporting its jurisdictional allegations by 'competent proof.'" *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 237 (7th Cir. 1995) (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189 (1936)).

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim, the "'complaint must contain allegations that plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Jakupovic v. Curran*, 850 F.3d 898, 901 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016)). As with a Rule 12(b)(1) motion to dismiss, the court accepts as true the well-pleaded factual

allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Id.* at 901–02. Because Scarr's complaint is *pro se*, the court construes it liberally and holds it to less stringent standards than if it had been drafted by counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

<u>MERS and Chase's Motion to Dismiss</u>

As noted, MERS and Chase move to dismiss under Rules 8(a), 12(b)(1) and 12(b)(6) on several grounds, including the *Rooker-Feldman* doctrine, res judicata, and preclusion principles. The court must first consider whether it has subject matter jurisdiction. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). If the court determines that subject matter jurisdiction is lacking, it must dismiss the case. *Id.*

The *Rooker-Feldman* doctrine divests lower federal courts of "jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 227 (Oct. 2, 2017); s*ee D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–6 (1923). When the doctrine applies, "there is only one proper disposition: dismissal for lack of federal jurisdiction." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004).

"Claims that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the [*Rooker-Feldman*] doctrine." *Mains*, 852 F.3d at 675. And claims that "were not raised in state court, or that do not on their face require

8

review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment." *Id.*; *see also Jakupovic*, 850 F.3d at 902 (explaining *Rooker-Feldman* applies to claims that are "inextricably intertwined" with a state court judgment). To put it differently, "'there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment.'" *Mains*, 852 F.3d at 675 (quoting *Sykes v. Cook County Circuit Court Prob. Div.*, 837 F.3d 736, 743 (7th Cir. 2016), *reh'g and suggestion for reh'g en banc denied* (7th Cir. Oct. 27, 2016)).

The complaint alleges Scarr was damaged by Chase "by being encumbered with a loan he rescinded[.]" (Docket No. 64 at 6, ¶ 38; *see also id.* ¶ 39–42 (alleging injuries from the loan origination and prevention of rescission)). The complaint also asserts Chase violated RESPA's and TILA's notification requirements in connection with the mortgage loan. (*Id.* at 6–8). In addition, Scarr alleges Chase engaged in fraud and conspiracy in obtaining the judgment against him. (*Id.* at 8–10). He argues that Chase's fraudulent acts "were hidden" from him and "prevent[ed] him from" defending against foreclosure (Docket No. 121, ¶ 124), and prevented his rescission (Docket No. 133 at 12 (emphasis omitted)). And in describing his claims, Scarr argues that the alleged RESPA and TILA violations were committed "to overcome the rescission" of his mortgage loan, that Chase's withholding of information was "so as to obtain judgment" against him, and that the defendants conspired to prevent his rescission of the mortgage loan, foreclose on his home, and "defraud him and the court." (Docket No. 121 ¶ 83). Therefore, Scarr's alleged

injuries are the foreclosure judgment against him and the loss of his home, which followed from the foreclosure judgment. And all of his claims are inextricably intertwined with the rescission issue and the foreclosure judgment.

Because the foreclosure judgment is the source of Scarr's alleged injuries, the *Rooker-Feldman* bars his claims to the extent the complaint seeks to challenge the state court foreclosure judgment or seek rescission of his mortgage loan. *See, e.g.*, *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) ("The *Rooker-Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court."); *Taylor v. Federal. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533–34 (7th Cir. 2004) (holding *Rooker-Feldman* barred mortgagor's federal claim seeking to have home returned based on creditors' alleged fraud effectively sought to vacate state court foreclosure judgment and claim for damages in amount of home's fair market value).

Scarr raises several arguments in an effort to avoid *Rooker-Feldman*, but none of them is persuasive. He maintains that he could not defend against the foreclosure action because of Chase's fraud. A similar argument was made and rejected in *Mains*:

> [T]he foundation of the present suit is [the plaintiff's] allegation that the state court's foreclosure judgment was in error because it rested on a fraud perpetrated by the defendants. [The plaintiff] wants the federal courts to redress that wrong. That is precisely what *Rooker-Feldman* prohibits, however. If [the court] were to delve into the question whether fraud tainted the state court's judgment, the only relief [the court] could give would be to vacate that judgment.

852 F.3d at 676.  The same result obtains here.  And as in *Mains*, the RESPA and TILA lack-of-notice claims are closely related with the foreclosure judgment; indeed, it is argued that they were committed "so as to obtain judgment" against Scarr. (Docket No. 121 ¶ 83).  The federal claims are barred by *Rooker-Feldman* because they are so closely related to the foreclosure judgment that the only way Scarr could prevail on them would be if the foreclosure judgment were disregarded or effectively vacated.  *See Mains*, 852 F.3d at 676–77.  Thus, the court lacks subject matter jurisdiction over Scarr's claims to the extent they challenge the foreclosure judgment or seek rescission of his mortgage loan, and such claims must be dismissed.

Scarr suggests the foreclosure action against him is still "open due to omitted party determinations."  Regardless of any party that he may think should have been included in the state court action, the action has been concluded and a final judgment was entered.  Scarr appealed to the state court of appeals, which affirmed the foreclosure judgment, and the Indiana Supreme Court denied transfer.  The state foreclosure action has been finally determined, and Scarr lost in state court.

Next, Scarr argues that *Rooker-Feldman* does not apply because he "was injured by the issue of his rescission being prevented" and the state court did not rule on his rescission.  (Docket No. 131 at p. 14, ¶ 33).  The plaintiff in *Mains* likewise argued that he had rescinded his mortgage, 852 F.3d at 674, and the Seventh Circuit determined that his claim of rescission could not be sustained without "disregarding or effectively vacating" the state court's foreclosure judgment,

11

which was barred by *Rooker-Feldman*, *id.* at 676–77.  So, too, here: this court cannot rule that Scarr rescinded his mortgage loan without disregarding and effectively vacating the state court foreclosure judgment.

Scarr cites *Iqbal v. Patel*, 780 F.3d 728 (7th Cir. 2015), suggesting he seeks damages for fraud activity that pre-dates the state court litigation such that *Rooker-Feldman* does not bar this action.  (Docket No. 133 at 12).  In that case, the Seventh Circuit explained *Rooker-Feldman* is inapplicable where the plaintiff seeks damages for out-of-court fraud that independently caused injury.  *Iqbal*, 780 F.3d at 730 (when extrajudicial fraud causes injury, "a district court has jurisdiction—but only to the extent of dealing with that injury").  But Scarr's alleged injuries come from the foreclosure judgment and loss of his home.

And the state court did address Scarr's rescission argument, even if it did so only implicitly.  Assuming that Scarr had the right to rescission,[4] the state court determined he failed to act on his belief that rescission was available and instead ratified the mortgage loan.  This determination precludes this court from deciding, or even considering whether, Scarr rescinded his mortgage.  Scarr claims—without authority—that a mortgage rescission functions as a lien or equitable interest (Docket No. 121 at 13; Docket No. 133 at 5, 9) and that a state court judgment lien is subordinate to a "prior lien created of rescission."  (Docket No. 121 at 10; Docket

---

[4]     Certain transactions, including residential mortgage transactions, are exempt from TILA's right of rescission and disclosure requirements under section 1635 of TILA.  *Briggs v. Provident Bank*, 349 F. Supp.2d 1124, 1129–30 (N.D. Ill. 2004).

No. 133 at 10). Even if there were such a legal argument, and to the court's knowledge there is none, this court cannot revisit the rescission issue. That has been decided against Scarr in the state foreclosure action. Scarr is asking this court to review the state court proceedings, and it cannot do so under *Rooker-Feldman*.

Scarr seeks to effectively vacate the state court foreclosure judgment by challenging the judgment's validity and by raising federal issues that are closely related to that judgment. Therefore, *Rooker-Feldman* divests this court of subject matter jurisdiction over his claims.

Even if some claims are not barred by *Rooker-Feldman*, the court determines they would be barred by res judicata (claim preclusion) or collateral estoppel (issue preclusion). In deciding the preclusive effect of a state court judgment, a federal court applies the law of the jurisdiction that issued the judgment. *See Mains*, 852 F.3d at 675. Accordingly, the court applies Indiana law to determine the preclusive effect of the foreclosure judgment.

Res judicata prevents "'repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies.'" *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.2d 988, 993 (Ind. 2014) (quoting *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013)). Under Indiana law, claim preclusion applies where there is: (1) a final judgment rendered by a court of competent jurisdiction; (2) the judgment was on the merits; (3) the matter "in issue was or might have been determined in the former suit;" and (4) there is an identity of the parties or their privies. *Ind. State Ethics Comm'n*, 18

N.E.3d at 993.  Claim preclusion bars not only those claims that were actually litigated in a prior action, but also all claims that could have been raised in that prior action.  *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016), *reh'g and reh'g en banc denied* (July 27, 2016).

The narrower preclusion doctrine known as issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit. *Mains,* 852 F.3d at 675 (citing *Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009)).  Issue preclusion may apply even if the second suit is on a claim different from that in the first suit.  *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012).  Under Indiana law, issue preclusion applies if there is: "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action."  *Id.*  In deciding whether issue preclusion should apply, courts also consider "'(1) whether the party in the prior action and a full and fair opportunity to litigate the issue and (2) whether it would be otherwise unfair under the circumstances to permit the use of [issue preclusion].'"  *Id.* (quoting *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. Ct. App. 2000), *trans. denied*).

Scarr argues claim and issue preclusion do not apply because of the defendants' fraud.  But he has not explained how the alleged fraud prevented him from raising his claims, including the claims he now makes, in state court.  Besides, the assertion that the foreclosure judgment against him was based on the

defendants' fraud runs Scarr's claims right back into the *Rooker-Feldman* jurisdictional bar. *See Mains*, 852 F.3d at 676 (noting the Indiana courts permit motions for relief from judgment based on fraud or misrepresentation by the adverse party, by motion or independent action).

With respect to most of Scarr's claims against Chase, the requirements of claim preclusion have been satisfied. The state court's foreclosure judgment is a final judgment for preclusion purposes under Indiana law, *see Mains*, 852 F.3d at 676, and it is a judgment on the merits, as it settled the issues before the court, including the total amount of the debt, identified the priority of Chase's claim, and directed that the property be sold to satisfy the judgment, *see HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 781 (7th Cir. 2015) (Hamilton, J., dissenting). In the state court foreclosure action, Scarr raised irregularities in the loan closing and his purported rescission. He also questioned Chase's standing to foreclose the mortgage, and he raised Chase's fraud and misrepresentation in connection with the loan origination and after the "rescission" as well as the TILA failure-to-disclose issues. However, these issues were not raised until Scarr filed his motion for relief from judgment.[5] Nonetheless, all these matters were decided or, in the case of Chase's standing, the alleged fraud/misrepresentation, and the TILA claims, could have been decided in the state court foreclosure action. *See Scarr*, 40 N.E.3d at 531, at *2–5 (quoting from Scarr's motion for relief from judgment). Scarr could have

---

[5]    Scarr did argue that Chase was not entitled to enforce the promissory note, and the trial court decided that Chase was so entitled. *Scarr*, 40 N.E.3d 531, at *2.

raised the conspiracy claims and RESPA failure-to-disclose claims, too.  Had he done so, such claims could have been decided in the state court action as well. Without question, Scarr and Chase were parties to the state foreclosure action. Therefore, Chase has shown that claim preclusion applies and bars Scarr's claims for alleged fraud and misrepresentation, conspiracy, his purported rescission, the TILA and RESPA claims, and on the matter of Chase's standing to foreclose the mortgage.

Some of the claims against Chase are also barred by issue preclusion.  As noted, there is a final judgment on the merits and both Scarr and Chase were parties to the state action.  Scarr argues that his "rescission" extinguished the mortgage, but the state court decided that he ratified the mortgage.  In finding that Scarr ratified the mortgage, the state court implicitly decided that he had not rescinded the mortgage loan.  The state court also decided that Chase was entitled to enforce the promissory note and was entitled to a judgment against Scarr.  And that court decided the amount that was due on the promissory note, including late charges, collection costs, foreclosure attorneys' fees, and interest.  (Docket No. 90-1 at 5).  This court cannot revisit the state court's determination on these matters. *See, e.g.*, *Mains*, 852 F.3d at 676–78 (the federal court must give preclusive effect to the state court's foreclosure judgment on issue of amount due and thus claims under RESPA and the Fair Debt Collections Practices Act were barred).  Further, Scarr had a full and fair opportunity to litigate the loan origination and rescission issues and it would not be unfair under the circumstances to apply issue preclusion here.

Therefore, some of Scarr's claims are barred not only by claim preclusion, but by issue preclusion as well.

Accordingly, the Magistrate Judge recommends that the District Judge grant the motion to dismiss of MERS and Chase.[6]

<u>The HUD Defendants' Motion to Dismiss</u>

Benjamin S. Carson, Sr., the Secretary of HUD[7] and, and John W. Lucey, the Director of Asset Sales[8], HUD move to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that all claims against them and all named HUD employees are barred by the *Rooker-Feldman* doctrine. They also contend that Scarr lacks standing to challenge the Secretary's actions under the NHA and to seek the imposition of criminal penalties and that he has not shown a waiver of sovereign immunity or entitlement to mandamus.

As discussed, Scarr's claims in this case are barred by the *Rooker-Feldman* doctrine and must be dismissed for lack of subject matter jurisdiction. Even if the

---

[6]    Even if the claims against MERS and Chase were not barred by *Rooker-Feldman* and preclusion principles, there are other reasons why they would be dismissed. The complaint wholly fails to make any factual allegation against MERS. And the RESPA and TILA origination claims are time-barred, see 12 U.S.C. § 2614 (one-year limitations for RESPA origination claims); 15 U.S.C. § 1640(e) (one-year limitations for TILA damages claim); 15 U.S.C. § 1635(f) (right of rescission expires three years after consummation of transaction) and the complaint fails to state a claim under RESPA on which relief can be granted.

[7]    Carson was sworn in as the Secretary of HUD and is automatically substituted for Julian Castro as a party under Fed. R. Civ. P. 25(d).

[8]    Carol J. Galante resigned in 2014 from the Assistant Secretary for Housing position and the position remains vacant.

claims against the HUD Defendants are not barred by *Rooker-Feldman*, other reasons warrant their dismissal for lack of jurisdiction.

First, the HUD Defendants contend that Scarr cannot establish standing either to bring a claim under the NHA against the Secretary or a claim for criminal prosecution.  If a plaintiff lacks standing, the court lacks subject matter jurisdiction and must dismiss the action for lack of jurisdiction.  *See Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017); *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015).  Standing "arises under Article III's 'case or controversy' requirement."  *Dunnet Bay*, 799 F.3d at 688.  A plaintiff must show the following three elements of Article III standing to establish jurisdiction: (1) an injury in fact, which is "an invasion of a legally protected interest"; (2) a causal connection between the injury and the defendant's conduct; (3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

The court agrees with the HUD Defendants that Scarr lacks standing to sue the Secretary under the FHA's mortgage insurance program.[9]  In considering the legislative history of the NHA, the Supreme Court determined:

> the primary and predominant objective of the appraisal system was the protection of the Government and its insurance funds; that the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagee; and that there is no legal relationship between the FHA and the individual mortgagor.

---

[9]    The Federal Housing Administration is part of HUD.  42 U.S.C. § 3533(b).

18

*United States v. Neustadt*, 366 U.S. 696, 709 (1961) (quotations and footnotes omitted).  Several courts have held that there is no private right of action for violation of the NHA and HUD regulations.  *See Burroughs v. Hills*, 741 F.2d 1525, 1531 (7th Cir. 1984) (holding no private right of action exists to sue HUD under the NHA); *Moses v. Banco Mortg. Co.,* 778 F.2d 267, 272 n.2 (5th Cir. 1985) (noting that four circuits have held that the NHA and its regulations do not imply a private right of action under the NHA or its regulations).  In *Sinclair v. Donovan*, Nos. 1:11-cv-00010 & 1:11-cv-00029, 2011 WL 5326093, at *3–5 (S.D. Ohio Nov. 4, 2011), the district court held that the plaintiff homeowners lacked standing to sue HUD under the FHA Insured Mortgage Program, which is the same program at issue in this case. The HUD regulations govern the relationship between the mortgagee and the government, not the relationship between the mortgagee and the mortgagor, in this case Scarr.  Thus, Scarr has no private right of action to sue the Secretary under the NHA and HUD regulations.

Likewise, Scarr "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citing, among others, *Younger v. Harris*, 401 U.S. 37, 42 (1971)).  In American jurisprudence, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.*; *Del Marcelle v. Brown County Corp.*, 680F.3d 887, 901 (7th Cir. 2012) (en banc). Therefore, Scarr lacks standing to challenge the prosecutorial decision to bring, or not to bring, a case against another.

Moreover, Scarr has not shown a waiver of sovereign immunity.  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  A waiver of sovereign immunity cannot be implied; such a waiver must be unequivocally expressed. *United States v. Sherwood,* 312 U.S. 584, 586 (1941); *United States v. King*, 395 U.S. 1, 4 (1969).  As the party asserting federal jurisdiction, Scarr bears the burden of establishing that the United States has waived its sovereign immunity. *Clark v. United States,* 326 F.3d 911, 912 (7th Cir. 2003) ("To maintain an action against the United States in federal court, a plaintiff must identify a statute that confers subject matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States to the cause of action.")

Scarr appears to seek damages from the Secretary and the HUD Defendants for alleged violations of RESPA, 12 U.S.C. §§ 2601–2617, and TILA, 15 U.S.C. §§ 1631–1651. (Docket No. 64 at 14).  Yet Scarr does not identify any provision in these or any other statute that waives sovereign immunity of the United States to a cause of action under RESPA or TILA.[10]  In any event, "[t]here is no waiver of sovereign

---

[10]     Section 1702 waives sovereign immunity for claims against HUD for alleged violations of the NHA; however, the waiver does not extend to other statutes. *See, e.g., Unimex, Inc. v. U.S. Dep't of Housing and Urban Dev.*, 594 F.2d 1060, 1061 (5th Cir. 1979); *Ku v. United States HUD*, No. 11 cv 6858(VB), 2012 WL 2864509, at *3 (S.D.N.Y. May 14, 2012), *aff'd*, 508 Fed. App'x 14 (2d Cir. 2013).  Thus, Scarr cannot

immunity for HUD in the FHA ….” *Thomas v. Butzen*, No. 04 C 5555, 2005 WL 2387676, at *3 (N.D. Ill. Sept. 26, 2005).  Furthermore, the United States, its departments, and its agencies are exempt from any civil or criminal penalty under TILA, 15 U.S.C. §1612(b).

Lastly, Scarr seeks a mandamus order to compel the Secretary to "operate its single Family Loan Sale Program under the law, regulation, and HUD's own published actions."  (Docket No. 64 at 14–15).  However, "[t]he extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer,* 466 U.S. 602, 616 (1984)).  Under the NHA, the Secretary has complete discretion in designing the loss mitigation program.  *See, e.g.*, 12 U.S.C. § 1715u(d) ("No decision by the Secretary to exercise or forego exercising any authority under this section shall be subject to judicial review.") Scarr has not identified any nondiscretionary duty the Secretary owed him; therefore, no mandamus should be issued.

For these reasons, the Magistrate Judge recommends that the District Judge grant the HUD Defendants' motion to dismiss.

<u>Motion to Dismiss of LSF9/Caliber Defendants</u>

The LSF9/Caliber Defendants move for dismissal of the complaint under Rules 8, 9, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  In their

---

rely on this waiver of sovereign immunity in this action which alleges HUD violated TILA and/or RESPA.

reply brief, these Defendants suggest that Scarr's response to their motions should be stricken for noncompliance with the court's Local Rule 7–1(e).  In preference to considering the arguments made in opposing the motions to dismiss, the court declines this invitation and will overlook Scarr's noncompliance.

As discussed above, Scarr's claims are barred by *Rooker-Feldman* and should be dismissed for lack of jurisdiction.  For example, the complaint asserts that LSF9 Mortgage Holdings violated RESPA by withholding proper notifications to Scarr and engaged in fraud to obtain a personal judgment against him.  (Docket No. 64 at p. 6 and ¶¶ 52–53, 54, 70, 72).  It also alleges that the LSF9/Caliber Defendants, along with the other defendants, committed fraud in order to obtain the personal foreclosure judgment against Scarr.  (*Id.* at p.8, ¶ 54).  As in *Mains*:

> [T]he foundation of the present suit is [the plaintiff's] allegation that the state court's foreclosure judgment was in error because it rested on a fraud perpetrated by the defendants. [The plaintiff] wants the federal courts to redress that wrong. That is precisely what *Rooker-Feldman* prohibits, however. If [the court] were to delve into the question whether fraud tainted the state court's judgment, the only relief [the court] could give would be to vacate that judgment.

*Mains*, 852 F.3d at 676.  As with the other defendants, Scarr's claims against the LSF9/Caliber Defendants are premised on their failure to accept his purported rescission of the mortgage loan and the foreclosure judgment.  (*Id.* ¶¶ 59–67, 70, 74).  The claims against the LSF9/Caliber Defendants invite the court to review and set aside the state court foreclosure judgment, and under *Rooker-Feldman*, the court lacks jurisdiction to give Scarr such relief.

Moreover, any claims against the LSF9/Caliber Defendants that do not challenge the foreclosure judgment could have been asserted against Chase in the state court action, and LSF9 Trust, as the current holder of the Note and Mortgage, is in privy with Chase. *See Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) (stating "[e]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor") (citation omitted). As a result, those claims would be barred by claim preclusion.

Therefore, the Magistrate Judge recommends that the LSF9/Caliber Defendants' motion to dismiss be granted.

### The Feiwell Defendants' Motion to Dismiss

The Feiwell Defendants move to dismiss the complaint in its entirety for failure to comply with Federal Rule of Civil Procedure 8 and because the complaint makes no allegation against them. They also argue that the entire complaint should be dismissed under Rule 12(b)(1) based on the same *Rooker-Feldman* arguments the other defendants have raised. They further contend that Count II of the complaint should be dismissed for failure to state a claim upon which relief can be granted.

As discussed, *Rooker-Feldman* bars the claims in the complaint to the extent the complaint seeks to challenge the state court foreclosure judgment or seek rescission of his mortgage loan. To the extent that any claims against the Feiwell Defendants are not barred, the defendants are correct that the complaint makes no

allegation against them anyway, and any such claims should be dismissed for failure to state a claim.

Accordingly, the Magistrate Judge recommends that the District Judge grant the Feiwell Defendants' motion to dismiss.

### Order on Related Motions

Scarr filed a Motion to Amend Plaintiff's Response to Defendants' Motions to Dismiss and for a 65-Paged Response (Docket No. 127). While the court is not unsympathetic to the hurdles associated with self-representation, Scarr has not shown that an amended response brief could possibly make a difference in the outcome of the motions to dismiss or that 65 pages of briefing is necessary. The *Rooker-Feldman* issue is dispositive of Scarr's claims, and Scarr has already addressed that doctrine in his response. Additional discussion of the lien-priority issue by Scarr would not make a difference in the recommendation to dismiss this action. Therefore, the motion to file an amended response is denied.

Scarr filed two separate motions for a hearing on the motions to dismiss (Docket Nos. 109 and 132). Because resolution of the motions to dismiss is straightforward and oral argument is unnecessary to assist the court in deciding the dismissal motions, the motions for oral argument are denied.

Scarr filed two motions seeking to file exhibits in support of the record and for consideration in deciding the motions to dismiss (Docket Nos. 137 and 138). Because none of the exhibits would affect the proper determination of the motions to dismiss, the motions are denied.

## Conclusion

<u>Motions to Dismiss</u>

For the foregoing reasons, the Magistrate Judge recommends that the District Judge GRANT the defendants' motions to dismiss (Docket Nos. 77, 79, 89, and 91) and to the extent the complaint seeks to challenge the state court foreclosure judgment or seek rescission of his mortgage loan, dismiss the claims without prejudice for lack of subject matter jurisdiction, but to the extent any of the claims are not barred by *Rooker-Feldman*, dismiss them with prejudice for failure to state a claim based on claim preclusion or issue preclusion.

Any objections to this Report and Recommendation on the motions to dismiss must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. The parties should not anticipate any extension of this deadline or any other related briefing deadlines.

<u>Other Pending Motions</u>

For the reasons stated, the Magistrate Judge DENIES all pending, non-dispositive motions (Docket Nos. 109, 127, 132, 137, and 138).

Date: 1/25/2018

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

KIMBALL RUSTIN ROY SCARR
114 N. 13th Street
Richmond, IN 47374-3215